UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Y & S MARINE, INC.                                    CIVIL ACTION

VERSUS                                                NO: 11-1425

TRAVIS MAZA                                           SECTION: "A" (3)

## ORDER AND REASONS

Before the Court are a **Motion for Partial Summary Judgment (Rec. Doc. 26)** and a **Motion for Partial Summary Judgment Dismissing Plaintiff's Claim for Maintenance and Cure (Rec. Doc. 33)**, filed by Plaintiff Y&S Marine. Defendant Travis Maza has filed responses **(Rec. Docs. 27, 34)** in opposition to the motions. The motions, scheduled for submission on April 25 and May 23, 2012, respectively, are before the Court on the briefs without oral argument. For the following reasons, both motions are **DENIED**.

**I.    BACKGROUND**

This case was originally filed as a declaratory judgment action pursuant to 28 USC § 2201. Y&S' claims arise under the Admiralty and General Maritime laws of the United States; therefore, this Court has subject matter jurisdiction based on 28 USC § 1333.

Y&S employed Maza as a deckhand on the M/V Titus, a vessel owned and operated by Y&S.[1] Maza contends that on February 14, 2011, he injured his back while performing part of his job duties. Maza was required to empty a 55-gallon garbage can from the engine room; the bag in question weighed approximately 70 pounds. In order to remove the bag from the vessel,

---

[1] It is undisputed that Maza is properly classified as a seaman within the meaning of the Jones Act, 46 USC § 30103 *et seq.*

1

Maza moved it from the stern of the vessel, which was adjacent to the dock, across the gangway and then approximately 30 feet along the dock to a trash cannister. Maza testified in his deposition that, during the process of lifting the bag in to the cannister, he performed a twisting motion in order to lift the trash over the lip of the cannister. He stated that as he lifted the trash he felt a severe pop in his lower back.

On February 15, 2011, Maza was transported to Westbank Industrial Medicine in Gretna, Louisiana, where he underwent a post-incident drug test and was examined by Dr. Brian Bourgeois. According to Maza, Dr. Bourgeois performed "a cursory exam without any x-rays," and informed Maza that he had a back strain which he could treat by "simply walking it off." Dr. Bourgeois released Maza to full duty.

Maza subsequently sought treatment in the emergency room of St. Francis Medical Center in Monroe, Louisiana, where he complained of lower back pain. Pursuant to its cure obligation, Y&S then arranged for Maza to have an evaluation with an orthopedist, Dr. Brian Bulloch of Monroe, Louisiana. Dr. Bulloch performed a lumbar MRI and found no evidence of neurologic decompression. The doctor treated Maza with multiple injections and recommended physical therapy and conservative treatment, expressing doubts about the utility of a spinal decompressive procedure for a young patient such as Maza.[2] The doctor further recommended that Maza avoid narcotics.

Maza presented at the emergency room for a second time, where he received a prescription for narcotic pain medication. He then retained counsel and exercised his right to be treated by a physician of his choosing, at which point Y&S authorized an evaluation by Dr.

---

[2] Maza has not attended physical therapy as recommended.

Douglas Brown. Dr. Brown recommended a two-level lumbar decompression and fusion at Maza's initial evaluation; at that point, Y&S sought an independent medical exam and suspended maintenance payments. Maza refused to undergo an IME on three separate occasions, arguing that his earlier examination with Dr. Bulloch constituted Y&S' IME. Y&S filed the instant declaratory judgment action in an attempt to compel the IME, at which point Maza filed an answer and counterclaim asserting claims for personal injury.

Y&S then filed a **Motion to Compel Travis Maza to Attend an Independent Medical Examination (Rec. Doc. 14)**, which was granted. Magistrate Judge Daniel E. Knowles, III found, pursuant to Federal Rule of Civil Procedure 35(a), that because Maza's physical state is in controversy in this action, he may properly be compelled to submit to a physical examination by a suitably licensed or certified examiner upon motion for good cause shown. Magistrate Judge Knowles found that an IME had not yet occurred in this suit, and ordered that Maza attend an IME conducted by Dr. Everett Robert, a neurosurgeon located in Metairie, Louisiana. This Court affirmed Judge Knowles' decision.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248). The Court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. Id. (citing Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### III. DISCUSSION

#### A. Motion for Partial Summary Judgment **(Rec. Doc. 26)**

In its first Motion for Partial Summary Judgment, Y&S requests that the Court dismiss Maza's counter-claim on the basis that Maza cannot prove the essential elements of his claims for Jones Act negligence and/or unseaworthiness. Maza's counter-claim against Y&S alleges that his injuries were the result of the carelessness, recklessness, and negligence of Y&S or its employees. Y&S argues that Maza's testimony unquestionably indicates that this incident was not caused by any negligent actions of Y&S, nor any unseaworthy condition of the M/V Titus. Y&S cites portions of Maza's deposition in which he testifies that 1) he was informed and trained on proper lifting procedure; 2) he had not experienced any issue in making this precise trash run on any prior instance; 3) he hurt himself when he abrogated from the advised proper lifting practice; and 4) his alleged injuries were not caused by the M/V Titus or her crew.

Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. Perkins v. Wood Towing Co., 1999 WL 777734, at *2 (E.D. La. Sept. 29, 1999) (citing Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997)). A seaman has a "light" burden of proof of causation for negligence

4

under the Jones Act. Crum v. United States of America, 2000 WL 943253, at *3 (E.D.La. July 6, 2000). To establish liability, the seaman must show that his injury was caused, in whole or in part, by the employer's negligence. Rushing v. United States of America, 1997 WL 800822, at *2 (E.D.La. Dec. 30, 1997) (citing Gautreaux, 107 F.3d at 338–39). Jones Act employers are held to a standard of ordinary prudence under the circumstances, Perkins, 1999 WL 777734, at *2 (citing Gautreaux, 107 F.3d at 336), and a Jones Act seaman is likewise obligated to act with ordinary prudence under the circumstances, Rushing, 1997 WL 800822, at *2.

Under the maritime doctrine of unseaworthiness, the vessel owner is required to furnish a vessel reasonably fit for its intended purpose. Rushing, 1997 WL 800822, at *2 (citing Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Webb v. Dresser Indus., 536 F.2d 603, 606 (5th Cir. 1976)). The duty imposes liability without fault, and while the plaintiff asserting a claim of unseaworthiness need not establish negligence or fault, he bears the burden of showing that the unseaworthy condition, i.e., the inadequacies of the ship or its equipment, "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Perkins, 1999 WL 777734, at *3 (quoting Phillips v. Western Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992); Springborn v. American Comm. Barge Lines, Inc., 767 F.2d 89, 97 (5th Cir. 1985)). Thus, a seaman seeking to recover under a cause for unseaworthiness has a more difficult burden of proof for causation than that required under the Jones Act. See Crum, 2000 WL 943253, at *3 (citing Smith v. Trans–World Drilling Co., 772 F.2d 157, 162 (5th Cir. 1985)).

Under both the Jones Act and the doctrine of unseaworthiness, the seaman's ordinary negligence is a defense to a claim. Rushing, 1997 WL 800822, at *2 (citing Marceaux v.

5

Conoco, Inc., 124 F.3d 730, 734–35 (5th Cir. 1997); 2 Norris, Law of Seaman § 30:32 (4th ed. 1984)). Under both types of claims, contributory negligence on the part of the seaman does not bar recovery but rather serves to reduce the seaman's damages in proportion to the degree of his negligence. Id.

With the foregoing principles of law in mind, the Court now turns to the facts of the case at hand. Maza admits in his deposition that when he began his employment with Y&S in September 2010, he was provided with a copy of the Safety, Health, and Environmental Manual and asked to review it.[3] The manual gives instructions on proper lifting procedures, which Maza testified that he understood. Maza further admitted that he attended a one-day safety school, where he was taught proper lifting techniques, and that he understood that he was expected to practice safe lifting while on the job.[4]

Maza testified that taking out the trash was a part of his normal deckhand duties, one that he had performed numerous times in the past without incident.[5] Maza stated that he understood trash disposal to be a "one-man job," and that he did not need any assistance or special tools to complete the task.[6] He stated that it was part of his job to ensure that the trash bag did not get overly full, and estimated that, on the day of the incident, the bag weighed the same amount that

---

[3] Maza Deposition, pp. 85, 133.

[4] Maza Deposition, pp. 135-137.

[5] Maza Deposition, pp. 86-87.

[6] Maza Deposition, p. 88, 90. However, the Court notes that Maza also responded to the question "Do you feel like you could have done something to prevent your accident?" with "Not really," and said that if he had asked somebody for help "[he] might have got laughed at." Asking somebody for help would not have prevented the accident, he testified, "[b]ecause ain't nobody going to help you. See p. 120.

it normally did.[7]

Maza admitted that he was injured when he attempted to twist the bag up and into the can, and that twisting at the waist with the bag was not proper lifting procedure.[8] He also testified that there was nothing wrong with the vessel M/V Titus that caused him to get hurt, and that none of the vessel personnel caused his injuries.[9] Y&S argues that these admissions by Maza demonstrate that he cannot establish the essential elements of either a claim for Jones Act negligence or of unseaworthiness, and that summary judgment on these claims must be granted.

In his opposition, Maza disputes Y&S' assertion that there are no questions of fact as to whether he can maintain a claim for Jones Act negligence or general maritime law unseaworthiness. Maza argues that the portions of the deposition cited above merely demonstrate the extent to which a deft and skilled lawyer can maneuver testimony, and states that the facts are significantly different from those portrayed by Y&S.

Regarding his alleged understanding of the safety procedures, Maza admits that he had an opportunity to read the 95-page Y&S Company Operational Policies & Procedures Manual, the 158-page Y&S Marine Vessel Operating Procedures Passenger Boat Policy, and the 342-page Y&S Marine Safety, Health & Environmental Manual during the application process; however, he testified that he told the Y&S representative who gave him the materials that he needed

---

[7] Maza Deposition, pp. 96, 109.

[8] Maza Deposition, pp. 29, 136. However, he also testified that "there was no way you could have picked up the garbage or even take out garbage without bending....There's no way that you can pick it up and without twisting and turning and put it in the trash can...There's no possible way." See pp. 257-258. He later said "There's no proper way to pick up garbage. And if there is, I'd like for somebody to show me if there is." See p. 260.

[9] Maza Deposition, pp. 93-94. Specifically, when asked "There was nothing wrong with the boat that caused you to get hurt?," Maza responded, "Nothing that I know of."

assistance to read them.[10] Maza testified in his deposition that he suffers from dyslexia, a learning disability. He attended special education classes in school, did not complete the 7th grade, is only "somewhat" able to read and write, and has never read an entire book.[11] Maza further testified that he informed Y&S of his inability to read well when applying for the position.[12]

Maza states that he was assigned the task of getting all of the garbage out of the M/V Titus and onto shore, that he was not provided with any assistance to perform that task, and that he was not provided with any mechanical means, such as a cart or dolly, to transport the approximately 70-pound bag of garbage to the nearest waste bin. According to Maza, he had only two alternatives when lifting the bag into the bin, neither of which corresponded with proper lifting procedure: 1) he could stand alongside and lift and turn to hoist the bag into the bin; or 2) he could face the bin, lean back with the heavy load, and extend his arms to place the load into the bin.[13] Maza asserts that he chose what seemed like the safer of the two options, and that he was injured during the process.

Maza admits that Y&S' safety manual says that deckhands must be capable of lifting and moving equipment that may weigh in excess of 100 pounds, but cites the 2003 Company Operational Policies & Procedures Manual in stating that such heavy loads are only meant to be carried *short distances*, not over 100 yards as in this case. Maza further asserts that the chore of lifting such a heavy bag into the trash could not possibly have been accomplished by one person,

---

[10] Maza Deposition, pp. 124-125.

[11] Maza Deposition, pp. 123-124.

[12] Maza Deposition, p. 124.

[13] Maza Deposition, pp. 257, 260-261.

8

without mechanical assistance, without violating the lifting restrictions. Maza points out the fact that Y&S and its safety representative have not yet been deposed, and contends that these witnesses will admit that employees should never be expected to carry 70-pound objects over 100 yards. Maza argues that the facts demonstrate that he was ordered to perform an unsafe task with insufficient manpower and that Y&S was aware of the unsafe conditions but took no steps to prevent the injury.

It is undisputed that Maza was given the safety materials cited by Y&S and that he was given an opportunity to review them; however, it is not clear that Maza's signing of the documents indicated a true appreciation of their meaning. When asked in his deposition if he knew what the "employment program acknowledgment"[14] meant when he signed it, he responded "That I'm getting a job...It means that I was going to like do my job, you know. And if I – pretty much if I do anything wrong, you know that they have a right to fire me. Is that what it means?"[15] Even if Maza did appreciate the meaning of the safety materials and knowingly mishandled the heavy trash bag, summary judgment is inappropriate in the instant matter because contributory negligence is not a complete bar to recovery in a Jones Act case. See Rushing, 1997 WL 800822, at *2.

It is also unclear from the facts presented whether the job of removing such heavy trash bags and transporting them over a distance of 100 yards is appropriate for one person, and for one person without a dolly or other equipment. The Court concurs with Maza's suggestion that

---

[14] The acknowledgment says that the signer is an employee of Y&S, has received the orientation and/or excerpt of the policies and procedure manuals, and concurs by signing that he/she voluntarily participates in the requirements as a condition of employment.

[15] Maza Deposition, p. 126.

summary judgment based solely upon the lay opinions given at his deposition would be inappropriate. Even without the benefit of Maza's opposition the Court would be reluctant to deprive Plaintiff of his day in court based solely upon the evidence presented. For now, the Court is not persuaded that Defendants are entitled to judgment as a matter of law on the facts presented. As such, summary judgment on Maza's claims of Jones Act negligence and unseaworthiness is denied.

> B. Motion for Partial Summary Judgment Dismissing Plaintiff's Claim for Maintenance and Cure (**Rec. Doc. 33**)

In its second motion for partial summary judgment, Y&S argues that it is entitled to assert the McCorpen defense to dispense with Maza's claim for maintenance and cure. The Fifth Circuit has held that a seaman's claim for maintenance and cure is properly dismissed if he willfully conceals a preexisting medical condition that is connected to the alleged injury. Y&S argues that it is entitled to assert the McCorpen defense because Maza intentionally concealed prior back injuries on a pre-employment medical questionnaire, Y&S would not have hired Maza if it had known of these prior injuries, and there is a causal link between Maza's prior back injuries and his current injury that is the subject of his counter-claim against Y&S.

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005) (citing Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987)). An employer is allowed to rely on certain legal defenses to deny these claims, such as the defense that the injured seaman willfully concealed a preexisting medical condition from his employer. Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)). "[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally

10

misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." Id. at 173 (citing McCorpen, 396 F.2d at 549).

To establish a McCorpen defense, an employer must demonstrate that:

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.

Id. at 171 (citing McCorpen, 396 at 548-49).

Y&S presents medical records as evidence that, in May 2009, Maza presented to the Emergency Room of the L.S.U. Health Science Center at the E.A. Conway Medical Center complaining of "sudden and severe back pain after lifting a log and twisting." Maza does not dispute that he injured his back prior to the incident complained of in this litigation; in his deposition, he recalled experiencing back pain after lifting a log. He described that injury as a "pretty bad muscle strain."

Y&S presents further evidence that, in January 2010, Maza was involved in a four-wheeler accident and presented to the emergency room complaining of neck, shoulder and back pain. Y&S therefore alleges that Maza had two back injuries, a neck injury, and a shoulder injury prior to the start of his employment with Y&S in September 2010.

Maza filled out a pre-employment medical questionnaire and underwent a physical at West Jefferson Industrial Medicine before commencing work as a deckhand. On the questionnaire, Maza circled "No" in response to the questions regarding neck, back and shoulder

injuries. He also checked "No" on the questions pertaining to these areas on his "Post-Offer Pre-employment Entrance Examination Form."

In his opposition **(Rec. Doc. 34)**, Maza argues that this Court should deny Y&S' motion because genuine issues of material fact exist as to whether Y&S can assert the McCorpen defense against Maza's maintenance and cure claim. Maza presents evidence to indicate that his misrepresentation of his alleged prior injuries was only a misunderstanding, that Maza would likely have hired him even if it had known of his alleged prior injuries because Maza was fit to perform the tasks for which he was hired, and that there is no causal link between the alleged prior injury and the current injury that is the subject of Maza's counter-claim.

For the reasons that follow, the Court finds that summary judgment is inappropriate on the issue of whether the McCorpen defense can be applied.

        1.        Intentional Misrepresentation

McCorpen's intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination. Id. at 175. Rather, this prong "is an essentially objective inquiry." Id. at 174. "The intentional concealment element does not require a finding of subjective intent." Id. "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement." Id. (quoting Vitcovich v. OCEAN ROVER, O.N., 106 F.3d 411 (9th Cir. 1997)).

In this case, Maza's testimony leaves significant doubt as to whether he understood the questions posed to him by the medical questionnaire. He testified "I didn't even read none of it... I mean, it was just a physical. I mean I was perfectly healthy....I thought this right here was talking about right then, you know, if I have a arm injury or a back injury or anything that wasn't

– nothing was hurting on me, and I ain't crazy. So I circled ["No" on] all of them there."[16] When asked, "So when it asked for your medical history, you thought that that meant at that very moment?," he responded, "Yeah."[17] When the questionnaire form was explained to him, Maza admitted that the correct answer to the question regarding a prior hand injury would have been "Yes;" however, he further testified "...I don't read as good as you-all or as anybody else. So whenever it comes to filling this out, I ask somebody, hey, what does this mean. And a lot of times I don't have anybody to explain anything to me. So I just circle or I get somebody else to do it, you know."[18]

However, even assuming *arguendo* that the questionnaire was obviously designed to elicit the information omitted by Maza, and that Maza intentionally concealed this information in filling out the questionnaire, the Court finds that genuine issues of material fact exist as to the second and third prongs of the McCorpen test.

2.      Materiality

Y&S contends that Maza's misrepresentation was material to its hiring decision. According to the Fifth Circuit, "[t]he fact that an employer asks a specific medical question on an application, and that inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown, 410 F.3d at 175.

Y&S' medical questionnaire sought information regarding virtually every part of the body; it is not clear that an affirmative response to the questions regarding Maza's back would

---

[16]    Maza Deposition, p. 166.

[17]    Maza Deposition, p. 168.

[18]    Maza Deposition, p. 169.

13

have been material to Y&S' hiring decision. As Maza points out, questions relating to his nose, genitalia, rectum, teeth, malaria, skin rash, or the like were also included on the form but are clearly irrelevant to an applicant's ability to perform the duties of a deckhand and probably do not materially impact Y&S' decision to hire.

The more material questions seem to have been posed on the actual employment application, where Y&S only asked two questions regarding the applicant's medical condition: 1) "Do you have any physical or mental condition(s) which may interfere with or hinder the performance of the job for which you wich [sic] to be considered?" and 2) "Have you ever had an on the job injury?" Maza answered "No" to these questions, and Y&S has not provided any evidence that his responses were untruthful. Maza testified that his prior back injuries did not cause him any discomfort at the time of his application and that he felt fully physically capable of performing the duties of a deckhand. The Court finds that genuine issues of material fact remain as to whether Maza's misrepresentations were material to Y&S' decision to hire him.

    3.    Causation

"Case law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." Brown, 410 F.3d at 175 (quoting Howard v. A.S.W. Well Serv. Inc., No. 89-2455-L, 1991 WL 365060, *2 (W.D.La. Dec. 5, 1991)). In establishing the requisite causal relation, "there is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Id. at 176 (quoting Quiming v. Int'l Pac. Enters., Ltd., 773 F.Supp. 230, 236 (D. Haw. 1990); McCorpen, 396 F.2d at 549).

14

Y&S asserts that Maza's old and new injuries are to the same location on the lumbar spine and are causally related. According to the 2009 medical records presented by Y&S, the doctor who treated Maza after his back injury resulting from lifting a log opined that Maza had decreased disk space at L5-S1, an apparent pars defect at L5, and spondylolysis with spondylolisthesis at L5-S1. Following the injury forming the basis for this claim and Maza's visit to St. Francis Medical Center for back pain, Dr. Davis opined that Maza suffered from spondylisthesis in the L4-S1 region of the lumbar spine. After an examination of Maza's MRI, Dr. Bulloch concluded that Maza suffers from L4-5 and L5-S1 disc disease with a small disc herniation at 4-5 causing slight nerve root compression. According to Y&S, this evidence showing damage to discs L4 and L5 demonstrates that Maza's prior injuries and current injury are causally related.

Maza argues that he suffers from a ruptured L4-5 disc caused by the alleged accident. He claims that the evidence also demonstrates that he has a pre-existing congenital back condition of mild spondylolysis and spondylolisthesis at L5-S1. According to Maza, these two conditions are developmental and easily seen on an x-ray; therefore, they would have been visible to the physicians who examined Maza during his pre-employment physical exam. Maza argues that sponydylolysis and spondylolisthesis are different from the condition of a ruptured disc, and points to the fact that the physicians approved him for employment without restriction as evidence that his earlier back condition and recent injury are not causally related.

The Court concludes that there is a genuine material fact issue as to causality in the instant case, because a reasonable factfinder could conclude that Maza's earlier injuries are not identical or substantially similar to the injury that forms the basis of his counter-claim against Y&S.

## IV. CONCLUSION

In this case, the Court finds that Y&S, the moving party, has not met its burden of proof because genuine issues of material fact exist as to whether Maza can prove the essential elements of his claims for Jones Act negligence and/or unseaworthiness. The Court further finds that genuine issues of material fact exist as to whether Y&S is entitled to assert the McCorpen defense against Maza's maintenance and cure claim.

Accordingly,

Y&S' **Motion for Partial Summary Judgment (Rec. Doc. 26)** and **Motion for Partial Summary Judgment Dismissing Plaintiff's Claim for Maintenance and Cure (Rec. Doc. 33)** are hereby **DENIED**.

This 5th of June, 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE